

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2004

# Nassralah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1734

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Nassralah v. Atty Gen USA" (2004). *2004 Decisions.* Paper 1065.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1065

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-1734

———

EVELEAN SOBHI MALACK NASSRALAH,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(A74 808 862)

———

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2004

Before: Sloviter, Rendell and Aldisert, Circuit Judges.

(Filed January 28, 2004)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

Evelean Sobhi Malack Nassralah filed this petition for review challenging the

February 21, 2003 Board of Immigration Appeals ("Board") affirmance of the decision of the Immigration Judge ("IJ") denying Nassralah's application for asylum and withholding of deportation. In this petition for review, we must decide whether the Board's determination that Nassralah failed to establish asylum eligibility by credible testimony is supported by substantial evidence. We will deny the petition for review.

Nassralah is a twenty-five year old woman, native and citizen of Egypt, who entered the United States as a visitor in 1996. She was permitted to remain here until December 3, 1996, but remained beyond that period and was placed in deportation proceedings. She applied for asylum and withholding of deportation, and in the alternative, voluntary departure.

In the hearing before the IJ, Nassralah admitted the allegations of fact and the charge of deportability, but claimed that as a Coptic Catholic she would be persecuted if returned to Egypt. Nassralah testified in her own behalf and presented three other witnesses to testify in her behalf – her sister-in-law, Eiman Youssef, her mother in law, Miriam Tadros, and her husband, Ghobrial "Victor" Youssef.

Because we are writing only for the parties who are familiar with the record and the proceedings before the IJ and Board, we will limit our discussion to the issues of law and the determinations of the IJ which were corroborated by the Board.

I.

Where, as here, the Board conducts a de novo review of an IJ's decision, we

review the Board's order as the final agency determination, and we also review the IJ's decision to the extent that the Board has adopted or agreed with it. Abdulai v. Ashcroft, 239 F.3d 542, 548-549 (3d Cir. 2001). Here, the Board stated:

> We agree with the Immigration Judge that the respondent failed to demonstrate by credible testimony that she qualifies for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), or withholding of deportation to Egypt under section 243(h) of the Act, 8 U.S.C. § 1253(h) . . . .

(App. at 4.) Accordingly, we review the IJ's decision as well as the Board's order. Abdulai, 239 F.3d at 548-549.

An alien has the burden of supporting her asylum claims through credible testimony. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). "Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard." Id. This Court must sustain the Board's adverse credibility determination if there is substantial evidence in the record to support it. Id. We have recently explained the substantial evidence test as follows:

> [T]he question of whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record . . . . Thus, where we review [the Board's] credibility determination, we must ask whether the determination is supported by evidence that a reasonable mind would find adequate. We look at an adverse credibility determination to ensure that it was 'appropriately based on inconsistent statements, contradictory evidences, and inherently

> improbable testimony . . . in view of the background evidence
> on country conditions.'

Dia v. Ashcroft, -- F.3d -- 2003 WL 22998113, at *13-*14 (3d Cir. Dec. 22, 2003) (en banc) (citations omitted).  "Generally, minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear of his safety are not an adequate basis for an adverse credibility finding."  Gao, 299 F.3d at 272 (internal quotations and citation omitted).  Moreover, the Board must provide specific, cogent reasons for reaching credibility determinations.  Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998).

The dispositive question here is whether the credibility problems are so minor and inconsequential that no reasonable factfinder could conclude that they undermine the story's credibility.  INS v. Elias-Zacarias, 502 U.S. 478, 483-484 (1992).  We turn to the IJ's evaluation of Nassralah's testimony and the accompanying determination that she lacked credibility, which the Board adopted.

## II.

The IJ delivered a detailed twenty-four page opinion discussing the testimony of all the witnesses and concluded:

> The credibility of the respondent is of extreme
> importance in assessing the alien's claim.  I have pointed out
> numerous conflicts between the respondent's testimony and
> either both or either one [sic] of her applications for asylum.
> I've pointed out numerous contradictions between the
> information contained in her two applications for asylum and
> numerous conflicts between what she told the asylum officer
> at her interview and the information she either gave to the
> Court via live testimony or in her application for asylum.

4

> And, the respondent's witnesses are even at odds with the respondent in some portions of their testimony. This is a totally incredible claim. The respondent is doubtlessly lying to the Court, totally fabricating an asylum application where there is no basis for asylum at all. The court considers this application and the testimony of the respondent and her witnesses to be nothing short of reprehensible in attempting to perpetrate a fraud against this court and against the Government of the United States . . . .
>
> Insofar as I have found the respondent and her application to be totally incredible, there is no way that I can find that she has established a prime facie case for asylum or for withholding of deportation. Accordingly, her asylum application will be denied.

(App. at 28-29.) We agree with the IJ's determination that Nassralah failed to establish through credible testimony that she was the victim of past persecution in Egypt and had a well-founded fear of future persecution on account of her religion.

We add these comments. Reduced to its essence, Nassralah contends that as a member of the Christian Coptic Orthodox church her life will be threatened by Muslim fundamentalists if she is returned to Egypt. The IJ, however, provided specific and cogent reasons in support of his finding that Nassralah was not credible, including references to particular instances of inconsistent testimony, the omissions of facts from her asylum applications and interviews, contradictions among her accounts and the general implausibility of her contentions, all of which went to the heart of Nassralah's asylum claim.

In her November 1996 asylum application, Nassralah claimed that she was a widow and that her husband was deceased. Later, in her 1997 application, she changed

her story and stated that her husband was alive and willing to testify for her. On her first and second application, Nassralah claimed repeatedly that she was raped by Muslim extremists. As the IJ noted, however, Nassralah and her husband both testified that Nassralah was not raped.

When read as a whole, Nassralah's testimony and the testimonies of the three other witnesses do not corroborate Nassralah's story regarding prior incidents involving Muslim extremists and her fears of returning to Egypt. Nassralah's mother-in-law, Miriam Tadros, testified that Nassralah and her son Victor were married in a rushed and secret ceremony because they feared they would be attacked by a Muslim fundamentalist leader who wanted to marry Nassralah. The IJ found Tadros' testimony unresponsive and unconvincing because she was not able to tell the court more information concerning this Muslim leader, including his name. Tadros also testified that Nassralah had told her that she was physically assaulted by a Muslim extremist in December of 1995. The IJ, however, noted that only with the prompting of Nassralah's counsel did Tadros change her testimony to reflect that Nassralah was sexually assaulted.

Nassralah's husband, Victor Youssef, testified that ten Muslim fundamentalists, including Al Gamma, who Nassralah claims had threatened to kill her if she did not marry him, broke in and attacked Nassralah and Youssef at their home in Algami after Nassralah and Youssef were married. Youssef testified that his wife, Nassralah, was sexually molested, though not raped, and that he was beaten, lost consciousness and

6

awoke in a shed tied to a pole. Although he escaped, Youssef testified that he decided to remain in hiding and not try to find his wife or contact the police out of fear he would be traced. The IJ found Youssef's testimony to be confusing and unconvincing, noting that "[t]he last that [the husband] remembered his wife . . . was her being molested by fundamentalists, being mistreated, and it doesn't make a scintilla of sense to the Court that he would not try to make some contact with her, first of all, to determine whether or not she was alive or dead, and second, to see her condition." (App. at 19.)

Although Nassralah testified that she went to the police and hospital after she and Youssef were attacked by Muslim fundamentalists, the IJ noted that she did not submit any documentary evidence to support these claims. See Gao, 299 F.3d at 272 (explaining that "the INS may require documentary evidence to support a claim, even from otherwise credible applicants, to meet their burden of proof"). Nassralah testified that two days after her secret marriage to Youssef, her family was beaten and their house ransacked by Muslim fundamentalists, but this incident was not mentioned in her affidavit. Nassralah also testified that her husband contacted her through her brother on March 20, 1995, yet in November 1996, she told the asylum officer that her husband was deceased. These inconsistencies are not minor or inconsequential, as they go to the heart of Nassralah's asylum claim based on past persecution in Egypt, and therefore, the IJ did not err in finding these inconsistencies to impugn Nassralah's credibility.

Moreover, both the IJ and the Board rejected as unconvincing Nassralah's

7

explanation for the discrepancies among her testimony, her interview, and her asylum applications – that the asylum officer proceeded in English and only used the interpreter during parts of the interview, which led to her confusion. Noting, however, that Nassralah later conceded that she used the interpreter when she did not understand what was being asked, the IJ explained that "the Court is not clear how the respondent would not be able to understand the questions using an interpreter that she brought with her." Because a reasonable factfinder could reach the conclusion that Nassralah's explanation for the discrepancies is insufficient, the agency's decision should not be disturbed.

Lastly, we disagree with Nassralah that the Board's order is vague and fails to specifically adopt the decision and reasoning of the IJ. The Board explicitly agreed with the IJ's credibility determination: "We agree with the Immigration Judge that the respondent failed to demonstrate by credible testimony that she qualifies for asylum . . . or withholding of deportation . . . " under the Act. (App. at 2.) As we have explained, the IJ's finding rested upon several inconsistencies, discrepancies and shortcomings in Nassralah's testimony. Because the Board's adoption and affirmance of the IJ's decision was supported by substantial evidence in the record, we cannot hold that the Board's adverse credibility determination was unreasonable.

## III.

Nassralah's petition for review of the order of the Board will be denied.

8

_____

TO THE CLERK:

Please file the foregoing opinion.

                    s/Ruggero J. Aldisert
Circuit Judge